Ann V. GARRETT and Roy D. Garrett, Plaintiffs–Appellants,

v.

COMMONWEALTH MORTGAGE CORP. OF AMERICA, et al., Defendants–Appellees,

and

Federal Deposit Insurance Corp., as Managing Agent for Resolution Trust Corp., Intervenor–Appellee.

No. 90–2862.

United States Court of Appeals, Fifth Circuit.

Aug. 12, 1991.

Paul Dodson, White, Huseman, Pletcher & Powers, Corpus Christi, Tex., for plaintiffs-appellants.

Richard A. Hipp, Brown & Fowler, Houston, Tex., for defendants-appellees.

Before SMITH and DUHÉ, Circuit Judges, and POLOZOLA,[1] District Judge.

DUHÉ, Circuit Judge.

The plaintiffs sued two wholly owned subsidiaries of a savings institution, but before trial the institution was placed in receivership. After the FDIC intervened, the district court granted its motion for a rule 12(b)(6) dismissal based solely on the court's conclusion that wholly owned subsidiaries can invoke the protections of the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e). 765 F.Supp. 351. Because the complaint on its face does not show that the plaintiffs' claims are barred under either the doctrine or the statute, however, we reverse and remand.

## FACTS

In 1978 Ann and Roy Garrett purchased a home in Texas, borrowing the money from Coastal Financial Management Company and assigning Coastal a deed of trust to secure payment of the note.[2] Later, Commonwealth Mortgage Corporation of America succeeded Coastal, with Commonwealth Mortgage Company of America, L.P. acting as servicing agent on the Garretts' loan. Both of these Commonwealth companies are wholly owned subsidiaries of Commonwealth Savings Association (CSA).

In September 1988, the house burned to the ground. In January 1989 the Garretts sued Coastal in Texas state court. The Garretts also named as defendants Commonwealth Mortgage Corporation of America and Commonwealth Mortgage Company of America, L.P. The parent company, CSA, was not named as a defendant.

The Garretts alleged that the defendants breached their contractual and fiduciary duties to maintain adequate insurance on the Garretts' property. They also accused the defendants of negligence and violations of the Texas Deceptive Trade Practices-

---

1. District Judge of the Middle District of Louisiana, sitting by designation.

2. We state the facts as alleged in the Garretts' complaint. This approach is appropriate because in reviewing a rule 12(b)(6) dismissal, we must accept the material allegations of the complaint as true and must construe them in the light most favorable to the nonmoving party. *See, e.g., Bell & Murphy & Assocs., Inc. v. Interfirst Bank Gateway, N.A.,* 894 F.2d 750, 752 n. 1 (5th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990).

Consumer Protection Act.[3]

The Federal Home Loan Bank Board appointed the FSLIC as conservator of CSA on March 8, 1989 and as receiver of CSA on May 23, 1989. On August 9, 1989 the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA) replaced the FSLIC with the Resolution Trust Corporation (RTC) and appointed the FDIC as managing agent for the RTC.[4]

In September 1989 the FDIC intervened in the Garretts' state-court case and successfully removed the case to federal district court. The FDIC then moved for dismissal under rule 12(b)(6), contending that the defendants, as subsidiaries of CSA, were protected from the Garretts' claims under the *D'Oench, Duhme* doctrine and its statutory counterpart, 12 U.S.C. § 1823(e). *See D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

Concluding that the defenses available under the *D'Oench, Duhme* doctrine and section 1823 apply to affirmative claims against wholly owned subsidiaries of a failed institution, the district court granted the FDIC's motion for dismissal. The Garretts appeal, arguing that the district court erred in allowing the FDIC's untimely removal of the case and in dismissing their claims under rule 12(b)(6).

## DISCUSSION

### Standard of Review

■ Removal is an issue of statutory construction; we therefore review it *de novo*. *See Nishimoto v. Federman–Bachrach & Assocs.*, 903 F.2d 709, 712 (9th Cir.1990) (issues of removal reviewable *de novo*); *Farmers–Merchants Bank & Trust Co. v. CIT Group/Equip. Fin., Inc.*, 888 F.2d 1524, 1526 n. 3 (5th Cir.1989) (issues of statutory construction reviewable *de novo*); *Emrich v. Touche Ross &*

*Co.*, 846 F.2d 1190, 1194 (9th Cir.1988) (issues of removal reviewable *de novo*). In deciding whether removal was timely, we must interpret section 1441a(1) of 12 U.S.C.

■ We also review *de novo* the district court's rule 12(b)(6) dismissal of the Garretts' case based on the *D'Oench, Duhme* doctrine and section 1823(e). *See Bell & Murphy & Assocs., Inc. v. Interfirst Bank Gateway, N.A.*, 894 F.2d 750, 752 (5th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990). We must accept all material allegations of the complaint as true and construe them in the light most favorable to the nonmoving party. *See Hernandez v. Maxwell*, 905 F.2d 94, 96 (5th Cir.1990).

■ Unless it appears to a certainty that the plaintiffs can prove no set of facts that would entitle them to relief, we cannot uphold an order of dismissal under rule 12(b)(6). *See Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339 (5th Cir.1989).

### Timeliness of Removal

FIRREA became effective on August 9, 1989. Before the passage of the Act, federal regulation of banks was separate from federal regulation of savings and loan institutions: the FDIC regulated banks, but the FSLIC regulated savings and loan institutions. FIRREA abolished the FSLIC and made the FDIC responsible for insuring deposits in both types of institutions.

In addition, FIRREA created the Resolution Trust Corporation (RTC) and made it successor to the FSLIC as conservator or receiver. *See* 12 U.S.C.A. § 1441a(b)(6) (Supp.1991). The Act also made the FDIC the exclusive managing agent of the RTC.[5]

---

**3.** *See* Tex.Bus. & Com.Code Ann. § 17.41 *et seq.* (Vernon 1987 & Supp.1991).

**4.** *See* Financial Institutions Reform, Recovery and Enforcement Act, Pub.L. No. 101–73, 103 Stat. 183, 364, § 501, 12 U.S.C.A. § 1441a (Supp. 1991).

**5.** FIRREA provides in relevant part: "Immediately upon enactment of [FIRREA], the Federal Deposit Insurance Corporation shall be authorized to and shall perform all responsibilities of the Corporation...." 12 U.S.C.A. § 1441a(b)(1)(C) (Supp.1991).

FIRREA specifically allows the RTC to remove a case to federal court: "The removal of any action, suit, or proceeding shall be instituted ... not later than 90 days after the date the Corporation is substituted as a party." 12 U.S.C.A. § 1441a(*l*)(3) (Supp. 1991).

The FDIC, acting as managing agent for the RTC, successfully intervened in the state-court action on September 8, 1989. On that date, the RTC, acting through its exclusive agent, the FDIC, became a party to the suit. The next day, the FDIC removed the case to federal district court.

■ The Garretts contend that removal was untimely because the FSLIC failed to remove the case to federal court during the time it was acting as receiver of CSA. This argument, however, ignores the independent right of removal that FIRREA plainly grants to the RTC. Nothing in the statute strips the RTC of this right when the FSLIC, its predecessor in interest, has failed to effect removal.

The statute gives the RTC 90 days after the date it "is *substituted* as a party." *Id.* (*Emphasis added*). This language plainly contemplates a situation in which the FSLIC has failed to effect removal before the RTC becomes a party. We conclude, therefore, that under the unambiguous terms of FIRREA, removal was timely.

*Appropriateness of Dismissal*

In his memorandum opinion, the district judge announced that the sole issue for resolution on the motion to dismiss was whether the defenses available under the *D'Oench, Duhme* doctrine and section 1823(e) apply to claims against subsidiaries of an insolvent financial institution. The judge explained that he had restricted his consideration to this issue because the parties had "submitted briefs on the motion [that] narrow the issues." He also noted that the Garretts had conceded that these defenses, if applicable to subsidiaries, would preclude their action.

It is true that the Garretts submitted an extremely limited response to the FDIC's motion to dismiss. In the one paragraph concerning dismissal, their sole argument is that the defenses of *D'Oench, Duhme* and section 1823(e) are available only to depository financial institutions and not to solvent subsidiaries. Neither in this response nor in any other part of the record, however, do we find a concession that the sole issue on dismissal is the applicability of *D'Oench, Duhme* and section 1823(e) to subsidiaries.

■ A dismissal under rule 12(b)(6) is inappropriate unless the pleadings on their face reveal beyond doubt that the plaintiffs can prove no set of facts that would entitle them to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). A court should therefore dismiss a case only if an affirmative defense or other bar to relief appears on the face of the complaint. *See Landry v. Air Line Pilots Ass'n Int'l AFL–CIO*, 901 F.2d 404, 435 (5th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.07, at 12–68 through 12–69 (2d ed.1990).

■ A dismissal may rest on the *D'Oench, Duhme* doctrine. *See Bell & Murphy*, 894 F.2d at 754. But the doctrine justifies dismissal only if the complaint alleges a secret agreement or if the complaint shows that the plaintiffs lent themselves to a scheme likely to mislead banking authorities. In either situation, dismissal is appropriate because the complaint has " 'a built-in defense and is essentially self-defeating.' " *Oliver v. Resolution Trust Corp.*, 747 F.Supp. 1351, 1354 (E.D. Mo.1990) (quoting C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d* § 1357, at 350–51 (1990)).

■ The Garretts' complaint neither alleges a secret agreement nor suggests any participation by the Garretts in a scheme likely to mislead authorities. Instead, it asserts claims for breach of contract, breach of fiduciary duty, and negligence. The FDIC argues that the Garretts' claims must be based on some unwritten agreement. We disagree. Neither breach of fiduciary duty nor negligence necessarily depends on an agreement between the parties.

The FDIC is correct that if a claim is based on an agreement, that agreement must meet the requirements of section 1823(e). But neither section 1823(e) nor the *D'Oench, Duhme* doctrine prevents plaintiffs from asserting affirmative claims or defenses that do not depend on agreements. *See Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 93–94, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987) (noting that neither *D'Oench, Duhme* nor section 1823(e) bars assertion of a fraud-in-the-factum defense); *Federal Deposit Ins. Corp. v. McClanahan*, 795 F.2d 512, 515 (5th Cir.1986) (explaining that the *D'Oench, Duhme* doctrine "has not been read to mean that there can be no defenses at all to attempts by the FDIC to collect on promissory notes").

The FDIC also argues that section 1821(d)(9)(A) precludes the Garretts' claims: "[A]ny agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver or the Corporation." Assuming that the deed of trust forms the basis for the Garretts' claims, the FDIC argues that this document fails to meet the requirements of section 1823(e). The complaint, however, does not show on its face that the deed of trust forms the basis for the Garretts' claims.

The FDIC's reliance on the *D'Oench, Duhme* doctrine and section 1823(e) is, at best, premature at this stage of the case. The pleadings on their face do not indicate that the Garretts' claims are necessarily barred under the doctrine or the statute. We therefore hold that the district court erred in dismissing the Garretts' claims under rule 12(b)(6).

We need not consider the issue of whether subsidiaries of failed institutions may properly assert the defenses available under the *D'Oench, Duhme* doctrine and section 1823(e). The district court improperly assumed that the resolution of this single issue would conclusively determine whether dismissal under rule 12(b)(6) was appropriate. But since the Garretts' complaint does not on its face create defenses under either the doctrine or the statute, the identities of those who may assert such defenses is simply not relevant to our decision.

*Conclusion*

We conclude that under the clear language of FIRREA, the RTC effected timely removal of this case to federal district court. We reverse and remand the case to district court, however, because the court erred in granting the FDIC's motion for a rule 12(b)(6) dismissal.

We find no support in the record for the articulated basis of the dismissal—a concession by the Garretts that if the *D'Oench, Duhme* doctrine or section 1823(e) applies to wholly owned subsidiaries, then their claims would be defeated. Furthermore, the Garretts' complaint does not indicate on its face that the claims are necessarily barred under either the doctrine or the statute.

REVERSED and REMANDED.